UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDIE JARAMILLO,<br><br>               Plaintiff,<br><br>        v.<br><br>JOSEPH BURNES, et al.,<br><br>               Defendants. | Case No.: 1:23-cv-00666-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN DEFENDANTS FOLLOWING SCREENING**<br><br>**14-DAY OBJECTION PERIOD**<br><br>Clerk of the Court to Assign District Judge |

Plaintiff Rudie Jaramillo is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

**I.      SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

//

//

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

2

section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty. of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

*grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### III.   DISCUSSION

#### A.   Plaintiff's Complaint

Plaintiff names Sergeant Joseph Burnes and correctional officers Alphonso Garcia, A. Rodriguez, M. Barrett, S. Bartolo,[1] A. Hernandez, J. Contreras, E. Ruiz, R. Villanueva-Garcia, all employed at California State Prison, Corcoran (CSP-Cor) as defendants in this action. (Doc. 1 at 1-3.)  He seeks a declaratory judgment, an "order for the Defs to not harass or assault the Plaintiff again," compensatory and punitive damages, costs of suit and any other relief the Court deems just. (*Id*. at 8.) Plaintiff states "[c]ameras should be put up in all areas of Corcoran State Prison also." (*Id.*) Plaintiff attached documentation related to Log Nos. 19-03132 and 19-05383[2] as exhibits to his complaint. (*Id*. at 9-19.)

#### B.   Plaintiff's Claims

Plaintiff alleges two constitutional claims: Eighth Amendment excessive force and First Amendment retaliation.

//

//

---

[1] Plaintiff later spells this individual's surname as "Bartolow." The Court elects to use Plaintiff's initial spelling.

[2] Log No. 19-05383 does not appear relevant to the claims asserted in Plaintiff's complaint. It involves different correctional officers—Alejo and Loza—and concerns a move from the 4A building to administrative segregation on an unidentified date that involved two strip searches, threats, and damage to Plaintiff' shoe. (*See* Doc. 1 at 14-15.)

4

Eighth Amendment: Factual Allegations

In his first claim for relief, Plaintiff contends that on April 29, 2019, at about 11 a.m., Defendants Ruiz, Contreras, and Garcia came to his cell door to perform a cell search. (Doc. 1 at 4.) Plaintiff asserts that because he had been attacked by Ruiz and Garcia four days prior, he refused to cuff up and "to put himself in [their] custody." (*Id*.) Plaintiff asked for a lieutenant or captain to respond. (*Id*.) Sergeant Burnes arrived and directed Plaintiff to cuff up; Plaintiff asked why. (*Id*.) Burnes replied, "You know why." (*Id*.) Plaintiff contends Burnes's response referred to Plaintiff having given an interview the day before concerning a staff complaint "for the 4-25-19 incident where 4 C/Os pulled a lanyard triangle trying to hurt" Plaintiff and fracturing his left ulna. (*Id*.) Plaintiff asserts that during that interview, "the Def was staring at him saying RAT and acting like he was going to hurt him with the other Defs present." (*Id*.)

When Plaintiff asked for "a non bias escort and was denied the Defs left and then came back with other Defs," including Barrett, Hernandez, Bartolo, and Rodriguez. (Doc. 1 at 4.) One or more of the officers was carrying a shield used for cell extractions. (*Id*.) Plaintiff alleges Defendants entered his cell and attacked him "with no cameras or non bias staff." (*Id*.) Plaintiff states that when the cell door opened, he "ran out into the dayroom to get a witness to the actions of the Defs." (*Id*.) Garcia, Barrett, Bartolo, and Hernandez then grabbed him and started hitting him with fists; Ruiz used his baton to repeatedly hit Plaintiff in the head. (*Id*.) Plaintiff states he "never chose to hit any of the Defs." (*Id*.) When Plaintiff "went to the floor," those officers piled on him, "striking his sides and legs." (*Id*) Ruiz jumped on Plaintiff's back "with his knee and his other hitting the floor," striking Plaintiff on the back of the head, shoulders, and spine with his baton. (*Id*.)

Plaintiff contends Hernandez and Bartolo were holding his arms, "kneeing and punching" him in the face. (Doc. 1 at 5.) Rodriguez and Burnes stood by watching, until they "saw the Plaintiff look at them then they took turns kicking" Plaintiff in the face, causing a gash to his eyebrow, bruising, and swelling. (*Id*.) Plaintiff also had "a split/gash" on his head from Ruiz's baton. (*Id*.) He asserts Garcia and Barrett hit and kneed his legs, "unnecessarily holding [his] prone legs." (*Id*.) Burnes finally ordered the officers to place cuffs and leg irons on Plaintiff. (*Id*.)

5

Plaintiff denies striking any Defendant "even though they were attacking him while his left arm was in a full arm splint" from the earlier incident. (*Id*.) When the cuffs could not be applied due to the splint, "they attempted to rip and twist it off as shown in the pictures of the incident." (*Id*.)

Plaintiff states he was escorted to the rotunda and directed to sit in a chair. (Doc. 1 at 5.) Plaintiff could not sit down due to the leg irons and the "chair backwards;" he told Defendants that, but they responded by pulling him to the floor. (*Id*.) Hernandez and Bartolo punched and kneed Plaintiff a few times, then picked him up. (*Id*.) Plaintiff then "chose to just sit down regularly on the now forward chair." (*Id*.) Burnes then radioed for a "GRV and medical." (*Id*.) Plaintiff alleges Burnes then "tried to humiliate" him by asking, "how does it feel to get battered?" (*Id*.) Plaintiff contends Burnes then punched him twice, saying "You ain't shit." (*Id*.) Ruiz yelled, "'Don't talk to my Sgt. like that," and tackled Plaintiff to the ground. (*Id*.) Ruiz punched Plaintiff and Burnes "ordered one of the Defs to 'break that fucking wrist.'" (*Id*.) Plaintiff states it was very painful because they "used the cuffs as leverage." (*Id*.) Plaintiff contends two "psychtechs" then came into the area and Burnes "yelled [hysterically] 'Get out, get out, get out if it doesn't concern you!'" (*Id*.) Plaintiff asserts the "psychtechs got scared and ran back out" and Burnes ordered the officers to pick Plaintiff up and sit him down. (*Id*. at 6.) Plaintiff states he "chose to go along with the Defs to get it over with." (*Id*.)

When medical arrived, different psychiatric technicians observed Plaintiff and he believes "they came with the GRV." (Doc. 1 at 6.) Plaintiff needed medical treatment and was placed on a gurney. (*Id*.) While on the gurney, Plaintiff states Burnes "tried again to humiliate" him by "taunting him with random comments of gang affiliations, baffling the responders and medical." (*Id*.) Burnes "kept it up" once outside the building. (*Id*.) Plaintiff asserts Bartolo and Hernandez watched and escorted Plaintiff for medical treatment. (*Id*.)

Plaintiff contends that after he was "done with medical a video staff complaint was done … with Sgt. Green," before Plaintiff was returned to his cell. (Doc. 1 at 6.) Plaintiff contends that during the entire incident, Defendant Villanueva-Garcia was in the tower, "doing as the Def. Sgt. Burnes ordered, [e]ven though he did not get a chance to hit and beat the plaintiff." (*Id*.)

Plaintiff contends the Defendants' actions were "done with malice and forethought" and they should be held accountable. (Doc. 1 at 6.) Plaintiff alleges he suffered lacerations to his head, bruising on his face, back, and left arm, and significant swelling. (*Id*. at 4.) He further alleges his "broken ulna and splint" were "reinjured." (*Id*.)

<u>Eighth Amendment Excessive Force Legal Standards</u>

"[T]he unnecessary and wanton infliction of pain on prisoners constitutes cruel and unusual punishment" in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 328 (1986) (internal quotation marks & citation omitted). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F. Supp. 797, 800 (N.D. Iowa) (quoting *Battle v. Anderson*, 564 F.2d 388, 395 (10th Cir. 1977)) (citation omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (internal quotation marks & citation omitted).

A correctional officer engages in excessive force in violation of the Cruel and Unusual Punishments Clause if he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). In other words, "whenever prison officials stand accused of using excessive physical force …, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). In making this determination, courts may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. Courts may also consider the extent of the injury suffered by the prisoner. *Id.* However, the absence of serious injury is not determinative. *Id.*

<u>Eighth Amendment Excessive Force Analysis</u>

Liberally construing the complaint, Plaintiff plausibly alleges Eighth Amendment excessive force claims against Defendants Barrett, Bartolo, Burnes, Garcia, Hernandez,

Rodriguez, and Ruiz. As to those individuals, Plaintiff alleges they sought to remove him from his cell and to assault him in retaliation for Plaintiff filing an earlier staff complaint. Barrett, Bartolo, Burnes, Garcia, Hernandez, Rodriguez, and Ruiz kicked Plaintiff or beat him with their fists, knees, or a baton while Plaintiff was restrained and allegedly compliant.

However, Plaintiff fails to allege a cognizable claim concerning Defendants Contreras and Villanueva-Garcia. Despite naming J. Contreras as a defendant in the complaint, Plaintiff alleges no facts whatsoever concerning Contreras. Moreover, the only facts alleged as to Villanueva-Garcia involve his or her position in the "tower" and the assertion that Villanueva-Garcia followed Burnes's orders. There are no facts to indicate Villanueva-Garcia was involved in physically assaulting Plaintiff, and, in fact, Plaintiff states Villanueva-Garcia "did not get a chance to hit and beat" him. Hence, Villanueva-Garcia did not use excessive force against Plaintiff.

### First Amendment: Factual Allegations

Plaintiff contends that the named Defendants retaliated against him by using excessive force because he participated in a "staff complaint video interview" the day prior. (Doc. 1 at 7.) He alleges "the Defs and other C/Os stared threateningly" at him during the interview, "mouthing the word RAT and pounding their hands into each other while walking by, laughing at the time." (*Id*.) As a result of the April 25, 2019, incident that was the subject of the staff complaint, Plaintiff suffered physical injuries. (*Id*.) Plaintiff contends that he was charged with battery on a peace officer. (*Id*.) He asserts the Defendants attempted to "stop hi[m] continuing his grievance and potential suit." (*Id*.) Plaintiff maintains that incidents involving the Defendants "happen repeatedly and day after the interview … Defs showed their intentions to the plaintiff during the interview and on the day of the beating told him" that Plaintiff knew why his cell was being searched and why he was being asked to cuff up. (*Id*.) Plaintiff identifies his injury as those physical injuries he suffered on April 29, 2019. (*Id*.)

### First Amendment Retaliation Legal Standards

Prisoners have a First Amendment right to file prison grievances and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559,

566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

<u>First Amendment Retaliation Analysis</u>

Liberally construing the complaint, Plaintiff plausibly alleges First Amendment retaliation claims against Defendants Barrett, Bartolo, Burnes, Garcia, Hernandez, Rodriguez, and Ruiz. Plaintiff alleges they assaulted him on April 29, 2019, in retaliation for Plaintiff having filed a staff complaint on April 25, 2019. Plaintiff alleges the actions by Barrett, Bartolo, Burnes, Garcia, Hernandez, Rodriguez, and Ruiz on April 29, 2019, were taken to prevent Plaintiff from "continuing his [earlier] grievance" and from filing suit. Plaintiff alleges Defendants' motive for retaliating against him is demonstrated by Burnes's comment to Plaintiff that he knew why his cell was being searched and by the others using the word "rat" while they observed the interview that followed the April 29, 2019, incident.

Nevertheless, as above, Plaintiff fails to allege a cognizable claim concerning Defendants Contreras and Villanueva-Garcia. Again, despite naming J. Contreras as a defendant in the complaint, Plaintiff alleges no facts whatsoever concerning Contreras. Additionally, the only facts alleged as to Villanueva-Garcia involve his or her position in the "tower" and the assertion that

Villanueva-Garcia followed Burnes's orders. Because Villanueva-Garcia was not involved in the excessive force incident, and because there are no facts asserted to indicate Villanueva-Garcia was present at or observed the interview and/or called Plaintiff a "rat," Plaintiff fails to state a retaliation claim against Villanueva-Garcia.

### C. Screening Summary

In summary, the Court finds Plaintiff has plausibly alleged Eighth Amendment excessive force and First Amendment retaliation claims against Defendants Barrett, Bartolo, Burnes, Garcia, Hernandez, Rodriguez, and Ruiz. However, Plaintiff has failed to allege those same claims against Defendants Contreras and Villanueva-Garcia. Hence, the Court will recommend that this action proceed only on Plaintiff's cognizable claims, and that Defendants Contreras and Villanueva-Garcia be dismissed from this action.

### IV.   ORDER AND RECOMMENDATIONS

The Clerk of the Court is **DIRECTED** to assign a district judge to this action.

For the reasons given above, this Court **RECOMMENDS**:

1. That this action **PROCEED** only on Plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims against Defendants Barrett, Bartolo, Burnes, Garcia, Hernandez, Rodriguez, and Ruiz; and

2. That Defendants J. Contreras and R. Villanueva-Garcia be **DISMISSED** from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be

disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**November 8, 2024**__          _____
                                         UNITED STATES MAGISTRATE JUDGE